Is case number 161053, Don E. Irish v. Craig S. Irish. Good morning. Good morning, your honors. May it please the court, I'm Marvin O'Regan on behalf of Craig Irish, with me at council table this morning as attorney lower student. May it please the court, I'd ask the court to take note of the following statement by the district court judge at a hearing on a motion to dismiss January 22nd, 2014. You're asking this court, the United States District Court, to divide that asset, an asset that you say should have been disclosed, was not disclosed. If that's not a modification of the decree, I don't know what is. And we're going to hear that motion to dismiss. The case proceeded with, pared down from nine initial counts that included fraud, civil conspiracy, to simply two. Both sounding in contract, flat breach of contract, second breach of the implied covenant of good faith and fair dealing on a marital separation agreement out of the middle sex program in the family court. There's a factual question I have for both sides. At some point, Judge Young dismissed the fraud and the tort claims as being barred by the domestic relations exception and basically told plaintiff to go back to state court. Did the plaintiffs go back to state court? And if so, what happened? The record doesn't indicate that. We were never told by plaintiffs. What we were told is they went to state court. They attempted to file in the program in family court. We were told, and I believe this is in the transcript, that when they went to the program in family court, they were told they couldn't file any disposition of the motions to dismiss. Judge Young said if they couldn't proceed in the family court, they could come back. But wouldn't you have a complaint? Wouldn't you have an order of some sort? I mean, you're just giving me hearsay. That is the state of the record in this case. The plaintiffs, when they moved to reopen the case with Judge Young, never provided Judge Young any documentation or information on what they attempted to do in the state court. Were you served with anything? No. All right. I'll ask them. Now, as the case proceeded before Judge Young, there was an issue of question of liability which was handled on a case-stated basis. In that hearing, on that day, Judge Young said this. I can't rewrite this separation agreement. That's a matter for the probate court judge. I can't relocate the assets because of an alleged misdisclosure. This is not helpful. All right? Judge Young flips back and forth in this case. He may have said some things that were helpful to you, but he also ultimately concludes in a way that you find anathema. There are certain legal issues on appeal that you need to get to. One is whether the domestic relations exception bars jurisdiction in this case. The other is whether Rooker-Feldman applies to this case and they addressing their argument that somehow you've waived it. We have all of these sort of procedural questions before we get to the merits of what Judge Young did. So it would be more helpful if you could structure your argument to address those issues. I'm sorry, that's exactly where I was going. So in those statements, what Judge Young was articulating is exactly the point we advanced before this court. That is, under both Rooker-Feldman and the domestic relations exception, on subject matter jurisdiction grounds, the district court could not ever reach the issue of whether, if there were no disclosed asset at the time of the divorce, a United States district court judge could do anything about it on an action brought for a breach of contract, in which the terms in question are physically, literally stricken out in the document itself. And so our position is, as we described in our briefs, that the lower court, when it got to the point of its decision on October 6, 2015, the decision, as you read the judge's own findings that day, are not, I find that the contract states Don Ives was entitled to receive 20%. That was not the judge's finding. The finding was Don Ives desired, Don Ives sought 20% in the divorce case. She didn't get it. Therefore, I decree she shall have 20%. Counsel, does it matter from the application of the domestic relations exception that the Judge Young said this, that the separate separation agreement, although incorporated into the divorce judgment, retained separate identity as a contract, and that seemed to be, it wasn't merged into the divorce judgment, that seemed to be important to his feeling that he could go forward and view this as a, yes, it comes out of a domestic relations situation, but basically he's addressing a contract claim, and that's what he's going to analyze. Was he right to take that view? No, he was not right to take that view, because the contract sought to be enforced, and the terms that he was enforcing, stricken from the contract. If you look at the separation agreement, you will see that everything that Judge Young avoided. That does not matter. That happens all the time in contract negotiations, that if it's appropriate to go over the history of negotiations, you'll find that some proposals were made and some were rejected. Why does that history matter for the applicability of the domestic relations exception? Two reasons. I'm going to add to what Judge Lopez said. You're trying to answer on the merits. We're asking a basic jurisdictional question. Judge Young thought he was free to get into all of this because he thought he wasn't in any way modifying a divorce degree. An answer that the claims arrived on, the claims being made here are stricken from the agreement, is irrelevant. Does this somehow modify a divorce decree, add to it, whatever? It does. There is no common law, there is no non-statutory right for property or income of one spouse to be awarded to another, other than as authorized by General Laws Chapter 208, Section 34. The only place, the only court, and the only time that parties to a divorce may agree to a narrow property division is on a document that is reviewed in a divorce case and that a probate and family court judge makes findings on and approves. If the terms are not contained in the approved agreement as approved in the judgment under Massachusetts law, those terms do not exist. Massachusetts law is fully clear. No court, nowhere, anywhere, other than a probate and family court, divorce court, may take another look at the terms of the contract as adopted and enforced. And Massachusetts law is clear. If the terms are not in that judicially approved contract, those terms are not enforceable. The only terms enforceable are those stated within the four corners of the document. What do you do with our Dunn case from Judge Boudin, which seems to say if there is an independent contract claim, the domestic relations exception does not apply? Massachusetts has that rule itself. I defer the court to the case of Hecock v. Hecock. In Hecock, it was a battery case. And in that case, the Massachusetts court held that because 20834, which is the marital property division statute, and the jurisdiction of the Massachusetts court, does not include torts, spousal abuse, assault and battery, that is not a matter that is disposed of within the divorce judgment. In our case, this claim is that, and this is how the judge announced his decision, this claim is that there was a marital asset and he was going to divide the marital asset. In the Committer v. Dunn case, the question addressed by this court and remanded, were they suggesting that proceedings be stayed because the main court handled the things and the issue was whether there would be an extension based on the domestic relations exception, this court held that at the state of the record, it wasn't clear whether, why, or how it would reach the domestic relations exception, that the main court still had to sort through what was going on. And so the remand, as I recall, was a remand with a stay to determine whether an extension would be appropriate and whether the domestic relations exception applied based on how Maine approached that issue. In Massachusetts, the Hecock case solves that. And in this case, it applies because the only matter before the district court in this case was whether something that was a marital asset should be divided by the United States district court because it wasn't divided in the divorce case. Which absolutely applies the domestic relations exception and absolutely is precluded under Rooker-Feldman because it is a modification of the marital property division. And that assumes that it was an asset in the first place, which under Massachusetts marital property law is very strong, it was not a marital asset. You're arguing against yourself now. You've just made your opponent's argument. It was not a marital asset. If it's not a marital asset, the statute you're relying on doesn't apply. It does because the only source of authority for a payment from one ex-spouse to another incident to the marriage is general law chapter 2 section 34. McCarty v. Norton and the cases we cite make it very clear that post-marital assets, increases in value of post-marital assets, post-marital income are not capable of an award from one spouse to another. And as a matter of contract law, this contract provides no authority for one spouse to receive a post-divorce payment. But the judge's holding in this case, his finding was that not that it was within the contract, not that it was a dangerous award to be calculated pursuant to the contract, but it's what she wanted and did not receive. If the court goes through the four criteria for the application of Rooker-Feldman, the court will see that all of those four criteria are certainly met in this case. Number one, it is clear that she sought this and she did not receive it. We've cited to a number of cases across the country, district court, circuit courts of appeals, every one of the cases in which a disgruntled ex-spouse seeks a federal court to revise terms under a marital property agreement, under any kind of a variety of theories is rejected under Rooker-Feldman and the domestic relations exception because it is a revision of the underlying case. Two cases we refer to specifically that I call the court's attention to are from Ohio and Connecticut. I think it's a much too formal view of Rooker-Feldman, but this is not a case where the Miss Irish is a loser because of something that the state court did. I mean, she is a loser because the state court approved a settlement agreement that their theory is she was fraudulently induced to agree to. So it characterized her as someone who was complaining about the Rooker-Feldman's with the notion that she was actually harmed in some way by what the court did. That's the theory. That doesn't seem to apply here. I would disagree because these separate go back to how this agreement may have any legal significance. This agreement may not and could not have any legal significance unless it were first approved by the program family court. What the DeRoge case, what the Sheelock case, I'm like on the Southern District of New York case that we said, they all deal with marital property agreements and underlying the claims in the federal courts were allegations that the marital property agreement was obtained by some form of misconduct, fraud, misrepresentation on the part of the defendant and federal court. In every one of those cases, Rooker-Feldman was applied to hold that the federal courts lack subject matter jurisdiction because that is a revision of the state court marital property division, which thought this was prohibited under Rooker-Feldman and under the domestic relations act. Just passing over jurisdiction. In light of the factual findings of the district court made about the conduct of your client and how that affected the willingness of his wife to enter into this agreement, what do you believe the appropriate contract remedy should have been given the findings of the district court? If the plaintiff said there was no, you can't use sort of a benefit of the bargain approach that you seem to have used. You say that's not appropriate because there was no agreement as to, there was no agreement to provide the outcome that Miss Eilish wanted. What follows from that argument? What do you think is looking at the subject of contract remedies? What should be the appropriate remedy in here? She should have, if that was an issue, sought rescission. And earlier in the case, that was one of the colloquies with Judge Young. I believe it was the same day as the first quote I read from, and the answer was no. The fraud and inducement cases, which we refer to in our brief, the option of fraud and inducement is not to chisel into the contract, trials that aren't in the contract that you wish were there. The option is to seek rescission of the contract because there is no meeting of the minds and to try it again. And that option was available to her in a state court proceeding. She could have filed and sought to have the divorce agreement recast or vacated because there was a failure to disclose. And if there was no further agreement, the whole divorce property division could have been put to trial and it could have been resolved. That was her option. But she chose instead to seek contract enforcement of a term that is not in the contract. And the Moore case, all of the cases we cited in Massachusetts, medical property, a contract law, are very clear. There can be no modification. Again, you're getting into the merits of the case. I think Judge Lopez was suggesting the choice of remedy here is also relevant to whether Rook or Feldman applies and whether the domestic violations exist. And so by choosing to seek contract damages, the plaintiffs identified the scope of remedy available from the federal district court and that did not, within the federal district court's jurisdiction, include adding, changing, or revising what the marital property distribution was so that by way of registration in this agreement, if this agreement had said, as many divorce agreements do, it is the intent of the parties and the parties hereby agree that they will divide their marital assets equally between them, 50% to each. And that was the term in this contract, which is not. And subsequent to the execution and approval of that contract, there were an item, a bank account, that was shown not to be listed. I would argue that might be a basis for a federal court on a contract, but that's not what we have here. Okay, your time is up. Thank you, Your Honor. Counsel, could you answer my first question? Do you remember the question? Absolutely, Your Honor. Thank you. Good morning. May it please the Court. With regard to your first question, we did briefly go back to the probate court. Your Honor may recall that when that event took place, we were on the eve of trial. I think we were at the pretrial conference and expecting to commence trial shortly thereafter. We accepted the proposal to go to the state court. We got there, and I believe this is actually recounted in our motion to reopen. We did file a motion to reopen, so I think this is in the record. We got to the probate court understanding we were in sort of a remand situation and thinking, okay, fine, we'll try it in the probate court. What we actually discovered was that, no, they weren't going to accept a remand from the federal court where we hadn't started there. And so we were going to have to start all over again. And at that point, I think we were, I forget now, two, three years into this, multiple motions. I mean, it had been a Donnybrook. And we decided we'd rather return to the federal court and try the case. And that's what we did. I'm sorry. What documentary evidence have you put in the record about what happened when you went back to the state court? I believe the only thing in the record would be our statements in the motion to reopen the case. I can't recall the docket number, Your Honor. Did you actually come up with a complaint of some sort and attempt to file it? No, Your Honor. So what is this? You talked to the clerk at the probate court, and you were told such a filing will not be welcomed? We spoke to the clerk multiple times. They couldn't find the file initially. I mean, this went on for weeks, Your Honor. And we eventually decided that we were better off accepting the trial in the federal court, which is what we did. You would have been happy to try the case in state court? In retrospect, we're much happier to have tried it in the federal court, Your Honor. Yes, of course, because you won. But that doesn't mean it was proper to be in federal court. So you've heard our concerns. Yes, Your Honor. Domestic relations exception. And then following that, Rooker-Feldman. Thank you, Your Honor. Turning to that, it is very important that this is a surviving separation agreement. That makes all the difference in the world. The case law is actually quite clear. Why does that matter if he ends up modifying the terms of the underlying state court judgment as to the division of assets? If he had modified, that would be problematic, Your Honor. But he did not modify. He enforced two express terms of the contract that were in the agreement as approved by the probate court. Nothing was changed. We embraced the contract. And that's the difference here. I mean, if the probate court approves the separate surviving agreement with these terms in the document, then those terms have to be enforceable. And if this court has jurisdiction to enforce a surviving agreement, which I submit the court said in its Mooney decision in 2006, and there's also numerous state court decisions holding that a surviving agreement may – I'm sorry. Your brief does actually quite a good job of telling us about the competence of the state court to handle this sort of dispute. Yes, Your Honor. That they routinely do. But when I read that, that merely reinforced my sense that that's where the case belonged, given the competence of the state court, and that the domestic relations exception in part is meant to honor the state court's competence to handle these problems. Not that we're incompetent, but, you know, in certain areas, the federal courts should not interfere with the proper running of the state court system. Well, the cases that I'm referring to, Your Honor, would put that jurisdiction in the superior court or the state district court, which would have no – It doesn't much matter from our point of view. Well, let me turn to the federal cases, Your Honor. I would say that this is governed by the Dunn decision. Dunn is a tort case, isn't it? It's a tort case, yes, Your Honor. A tort case, not a contract case. Absolutely, Your Honor. But Dunn also follows the Ankenbrand decision and picks up on the dramatic narrowing or clarification of the domestic relations exception. But it was not a contract case. You're claiming that the reason why we have jurisdiction is because you're suing on a contract and not a domestic relations situation. The Dunn case involved a tort action brought against the former wife. Agreed, Your Honor. The important point, and we actually thought the tort claims, the federal court had jurisdiction over those as well, but the court was being very cautious, we think. But Dunn makes quite clear, based on Ankenbrand, it says that lawsuits affecting domestic relations, however substantially, are not within the domestic relations exception unless the claimant issue is one to obtain, alter, or end a divorce, alimony, or child custody decree. None of those things happened here. This was a battle about property. And so basically what the appellant would do is engraft a fourth clause. Do you think that's a full statement of the domestic exception? Only those three situations? I do, Your Honor. What about if it involved the settlement decree? If we were seeking to modify or rescind the settlement decree, that would be a problem under the Mooney decision and under Saltmarsh. What we are doing is enforcing the decree. And that's an important distinction. Well, is the decree in this case changed in any way by Judge? It is not, Your Honor. It isn't? Not at all, Your Honor. The separation agreement, as approved by the probate court, included the representation and warranty that Mr. Irish had disclosed all his assets. It included a term obligating him to do nothing to deny Ms. Irish her fair share of his share of the company. It included the implied covenant of good faith and fair dealing. And so we are not amending, we're not modifying, we're not rescinding the separation agreement, and therefore there is no impact on the decree. And I would ask Your Honors to look at the Kraft decision. That's a state Supreme Court decision, 439 Mass 97. Is that in your brief? Yes, Your Honor. At page 107, the defendant makes essentially the same argument that is made here. In the Kraft decision, there was a surviving separation agreement, and the ex-wife received 50% of the husband's pension benefits. He arranged to sort of transmogrify those pension benefits into disability benefits and then said, well, the separation agreement just says pension, so you don't get any of my disability benefits. In an action in the probate court, but under the declaratory judgment statute 231A, the wife persuaded the court that the implied covenant of good faith and fair dealing would not let him do that, that she got 50% of the disability benefits too. He came back and made essentially the same argument, you can't do this to me, it's a modification of the agreement. And he said that effectively the declaratory judgment action under 231A, I'm reading it on the fly and doing a bad job, but he argued that it was a modification. And the court said no, that that in fact was an interpretation of the agreement to effectuate the proper intent of the parties and implement the spirit of the bargain, which is what was done here. That's fine as a matter of state law, but we're faced with federal law as to the extent of our jurisdiction. And I'm not certain that it matters whether it's an enforcement of a prom of a domestic relations decision or whether it is a modification. So the premise of your argument, I have a question about. The state courts are free to order this any way they want, but it just seems odd to have a federal court do further proceedings on a separation agreement. Well, let me put it to Your Honor this way. What we really have I think is a non-controversial initial premise, and that is that a surviving separation agreement is separately enforceable, including in the federal court, and Your Honor said that in the Moody decision. That I think is a baseline. And so then the question becomes, does the federal court have the power then, the jurisdiction, to enforce the entire agreement and all of the provisions in it, or is it divested of jurisdiction if the award of damages involves a marital property issue? And the answer is no. And that's where one looks at Dung v. Cometa, and in particular I would actually refer Your Honor to the Marshall decision. I know that Marshall is a probate exception decision, but it's quite analogous to domestic relations. In fact, Marshall discusses the domestic relations exception at some length. The important thing about Marshall is that in Marshall, we had a widow suing the son of her deceased husband, and the gist of the claim was you committed undue influence, fraud, forgery. You essentially cheated me out of my share of the husband's estate. There were parallel actions. There was one in federal court. There was one in the Texas probate court. The Texas probate court actually entered a judgment over the widow's objection, saying that the will was valid and a related intervivalist trust was valid. Nevertheless, the Supreme Court said that the widow still had claims against the son because they sought an in personam damages remedy against the son, and that did not require the federal court to undo the will or to undo the trust. It was a damages remedy against the son, and the court specifically said that it could do that even though it involved adjudicating rights and property within the estate. And what about Judge Lopez's point that one might look at this and say the appropriate remedy would be rescission, which is even more closely tied to what the state court did, and that the giving of damages here doesn't get around the problem of what the appropriate remedy should have been for a breach of contract claim? Well, I would respectfully disagree that rescission is the only option here. That would have been an option, one that we could not press in this context. But an award of damages for a breach is a fairly commonplace thing. How does one measure the damages here? We were told by Mr. Irish that he would never agree to, well, in fact the negotiated history indicates that he would never agree to the terms that Judge Young now seems to be reading into the contract and is finding a breach of some fictional agreement. So I don't know if he referred to a benefit of the bargain remedy. How is this a benefit of the bargain remedy? It seems some kind of free-flowing, equitable disposition, which strikes me as odd for a breach of contract action. I just don't see how he brought up the remedy that he got here. Well, two ways, Your Honor. I think on the direct breach of contract claim that he breached the express terms, Judge Young did engage in sort of a fore-exercise of how would this have come out if Mr. Irish had been honest, if he had disclosed the asset. And that actually is not that difficult a process. There are established factors. We made a record on those factors. There are established cases showing that in a long-term marriage like this one, a 17-year marriage, the default is 50%. 20% is quite modest. But also let's not forget in the implied covenant of good faith and fair dealing portion of the case, he specifically found based on the only credible testimony that was presented, that being Mr. Irish's testimony, that the spirit of the bargain was that she would get 20% of Mr. Irish's interest in the company. And once you get that far, if you find that the spirit of the bargain was that she would get 20%, which is a fact finding that the court made based on the only testimony it found credible, then it's actually a simple mathematical process. He got paid out 21%. She would have gotten 20% if he said he never would have agreed to it. Judge Young said that would be reckless. Correct, John. Is he saying then that, okay, if you had actually gone to court and tried this, a court would have awarded in accordance with Ms. Irish's demands. Is that what he was saying? It's ambiguous, but I think that is what he's saying. I think he's making a determination of what her fair share of the asset would have been even if Mr. Irish had been obstreperous and insisted on going to trial. I think he does make that finding on the direct breach of contract count. I think on the implied covenant of good faith and fair dealing count, we have a fairly clean, simple finding that based on the only credible evidence, the spirit of the deal was that she would get 20% of the asset. And so it leads you to the same place, perhaps through a shorter path. Has this case been through our CAMP program, Civil Appeals Management, with Judge King? Yes, it has, Your Honor. Thank you. I'm almost out of time, so thank you both. Thank you. Thank you, Your Honors. I'd like to touch on a couple of points. As I listen to my brother read his briefs and listen to the Court's comments, I'm struck by the fact that there isn't a single case that Don Irish has produced from any bankruptcy court, district court, or court of appeals in which any federal court has taken the step to that Judge Young did or that this Court has asked to affirm. And, in fact, if this Court researches, the Court will find that in every case we will find, on Rooker-Feldman and domestic relations exception, every attempt to recast any claim, such as Don Irish's attempts here, was rejected, either solely on Rooker-Feldman or a combination of Rooker-Feldman and the domestic relations exception. In part, that is because of the question, was this an asset? That is a question uniquely within the expertise of the State Court in the context of a Maryland property. The Fannin Steel case, which we referred to in our materials and in our reply brief, recently decided makes it abundantly clear that whatever this future opportunity for payment may have been at the time of this divorce, it was not an asset. And that question is a question that belongs to be resolved under the domestic relations exception in the State Court. The Marshall case does not give Don Irish an escape hatch from that outcome. The Marshall case did not affect the scope of the domestic relations exception. The Marshall case was a tort case. The Marshall case was not an attempt to redo, revise, or adjust any agreement or judgment in the little context involving Mr. Marshall. It was a tort case brought for intentional interference with an expectancy of inheritance. And on that basis, diversity jurisdiction was allowed to go forward. This is a case in which this plaintiff explicitly has argued and the district court judge has explicitly decided that had the case gone to trial, this outcome would have occurred. As a point of fact, there is no presumption in any divorce, no matter what the length of time is, that anyone is going to receive anything at any time. Under Chapter 208, Section 34, whether women have assets to be divided is discretionary. Your time is up. Thank you. Thank you, Your Honor.